**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Kerry L. Pope (B-28051), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24 C 50172 |
| v. | ) | |
| | ) | Hon. Iain D. Johnston |
| Nurse Chattick, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Illinois prisoner Kerry L. Pope initiated this lawsuit *pro se* under 42 U.S.C. § 1983 concerning the medical care he received at the Dixon Correctional Center after ear surgery on October 4, 2023. He returned to Dixon the same day with "very specific medical instructions." According to Pope, Dixon's Medical Director Larry Sy and Nurse Lynn Chattic (sued as "Chattick") did not follow the instructions and, instead, left him in "severe pain with zero medical attention" until October 6, 2023. Dkt. 1, Comp. at pp.4-5. Defendants Sy and Chattic deny any unconstitutional conduct and move for summary judgment in their favor. For the reasons discussed below, the Court grants Defendants' motions for summary judgment.[1]

**Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The procedures set out in L.R.56.1 "serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the

[1]Pope filed a response to Defendants' motions, titled "Reply for Final Summary Judgment pursuant to Rule 56" that was docketed as a motion for summary judgment. Dkt. 76. Pope requests "an Order in favor of this pro se inmate and denys both of the defendants motions for summary judgment dismissal and that this case moves forward as a reasonable jury could find for this plaintiff in a jury trial." *Id.*, p.13 (verbatim). In other words, Pope wants to proceed to trial. The Court therefore considers Pope's submission only as a response to Defendants' motions for summary judgment.

supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). "A mere scintilla of evidence in support of the nonmovant's position is insufficient . . . a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir. 2001) (internal quotation marks and citation omitted). The Court considers only facts presented in compliance with Local Rules 56.1. *Smith v. Cipolla*, No. 23-2085, 2024 WL 5102485, at *1 (7th Cir. Dec. 13, 2024) ("the judge was entitled to insist on strict compliance with local rules" even for *pro se* litigant).

**Background**

Illinois prisoner Kerry L. Pope was diagnosed with a perforated eardrum when he was five years old. Dkt. 63, Def. Sy L.R. 56.1 Stmt. of Material Facts (Sy SOF) ¶ 5. The condition caused him to experience frequent ear infections and hearing loss in his left ear. *See* Dkt. 72-1, Def. Chattic L.R. 56.1 Stmt. of Material Facts (Chattic SOF) ¶¶ 2, 9. He did not treat the condition for most of his life, and only started to do so after incarceration. Chattic SOF ¶ 4. Treatment consisted of medicated drops that largely resolved the ear infections. Chattic SOF ¶¶ 5, 9, 10. But Pope continued to experience hearing loss in the ear. *See* Chattic SOF ¶¶ 2, 11.

Pope was transferred to the Dixon Correctional Center on May 18, 2022. Chattic SOF ¶ 7. He was housed on the third floor of the healthcare unit because he suffers from multiple medical issues. Chattic SOF ¶ 8. In Pope's opinion, the medical staff at Dixon generally do "a better job" of "help[ing] him medically" than the medical staff at his previous facility. Chattic SOF ¶ 7.

Pope received outpatient surgery to correct the damage to his left ear on October 4, 2023. Chattic SOF ¶ 13. Pope testified during his deposition that the "main reason" he wanted surgery was to prevent ear infections but that he also hoped for improved hearing. Sy SOF ¶ 19.

Dr. Miriam Redleaf, who is not a defendant to this lawsuit, performed the surgery at the University of Illinois, Chicago. Chattic SOF ¶ 11. Redleaf advised Pope that the surgery could, but might not, improve hearing in his left ear. Chattic SOF ¶ 11. Redleaf also advised that it was normal for the ear canal and incision to "bleed for 2 weeks after surgery." Chattic SOF ¶ 12. Pope returned to Dixon on October 4, 2023, between 7:00 p.m. and 7:30 p.m. Chattic SOF ¶ 14.

Pope's After Visit Summary included the following instructions, in relevant part:

- You may take Tylenol and ibuprofen for pain control, for severe pain you can take the narcotic medication, Norco.
- Please take the antibiotic Augmentin for 7 days, twice a day as prescribed.
- You have an incision behind your left ear, please keep this covered with the hard head wrap dressing for the next 5 days.
- After 5 days you may put bacitracin ointment on the incision behind your ear.
- There is a cotton ball in your ear, this may fall out.

*See* Chattic SOF ¶¶ 17, 18 (citing Ex. E, IDOC_000308). The discharge instructions do not include an order to change Pope's wound dressing during the five-day period immediately following surgery. *See* Sy SOF ¶ 28; *see also* Ex. B to Sy SOF, UIC 000227-239.

University of Illinois physicians prescribed the following medications: 875 mg Augmentin (an antibiotic) two times a day for seven days; 325 mg Norco every six hours for severe pain for three days; 600 mg Motrin (commonly known as ibuprofen) every six hours for 20 days; and 325 mg Tylenol (commonly known as acetaminophen) every six hours for 20 days. Chattic SOF ¶ 17 (citing Ex. E, IDOC_000292, 000294, 000296, 000298). Pope also had active, existing prescriptions for Tramadol twice a day and Gabapentin twice a day, and his medication chart

reflects that he received Tramadol and Gabapentin as prescribed on October 4, 2023, and October 5, 2026.[2] Chattic SOF ¶ 16 (citing Ex. E, IDOC_000517); *see also* Chattic Ex. E, IDOC_000516, IDOC_000518.

Defendant Lynn Chattic is a registered nurse who was employed at Dixon on October 4, 2023. Chattic SOF ¶ 19. She worked the evening shift, meaning that she began her shift at 5:30 p.m. and ended at 6:00 a.m. the next day. Chattic SOF ¶ 20. Chattic is not licensed to prescribe controlled substances, nor may she order medications for a prisoner. Chattic SOF ¶¶ 21, 22 (citing Ex. F, Chattic Decl. ¶¶ 4, 5). For medications to be dispensed to a prisoner, the medication must be ordered by "a licensed physician, psychiatrist, or dentist within the facility." *See* Chattic SOF ¶ 21 (citing Ex. F, Chattic Decl. ¶¶ 4, 16); *see also* Chattic Decl. ¶ 3.

Nurse Chattic processed Pope back into Dixon on October 4, 2023, following his ear surgery. Chattic SOF ¶ 23 (citing Ex. F, Chattic Decl. ¶ 14). Chattic called the Dixon physician who was on call that night—Dr. Percy Myers—to discuss Pope's post-surgery instructions. Chattic SOF ¶ 24. Pope's medication chart reflects that an unidentified medical provider subsequently ordered 875 mg amoxicillin (an antibiotic) twice a day for seven days and 600 mg Motrin (ibuprofen) for 20 days. Chattic SOF ¶ 25 (citing Ex. E, IDOC_000517); *see also* IDOC_000516.

---

[2]Chattic defined some but not all the relevant medications identified in Pope's medical chart. The Court has referred to Drugs.com for background information on the undefined medications. *See Rowe v. Gibson*, 798 F.3d 622, 628 (7th Cir. 2015) (allowing district courts to consider "background information" from reliable websites to extent the information helps the judge and reader understand the court's opinion). Norco "contains a combination of acetaminophen and hydrocodone." Drugs.com, Norco, https://www.drugs.com/Norco.html (last visited Sept. 9, 2026). "Hydrocodone is an opioid pain medication." *Id.* Tramadol is "an opioid agonist that may be used to treat moderate to moderately severe chronic pain[.]" Drugs.com, Tramadol, https://www.drugs.com/tramadol.html. Gabapentin is used to treat various types of pain as well as anxiety. Drugs.com, Gabapentin, https://www.drugs.com/Gabapentin.html.

Chattic's initials do not appear on the chart for these medications. Chattic SOF ¶ 25. Chattic did not work a shift beginning at 5:30 p.m. on October 5, 2023. Chattic SOF ¶ 27.

Defendant Larry Sy is a physician licensed to practice medicine in Illinois. Sy SOF ¶ 2. He was employed as Wexford Health Source, Inc.'s Medical Director at Dixon in October 2023. Sy SOF ¶ 2. In his role as Medical Director, Sy provided medical care to prisoners and participated in collegial review regarding requests for offsite medical care and treatment for prisoners. Sy SOF ¶ 3. The Medical Director also is responsible for, among other things, "making and reviewing all medical/clinical decisions" and is "ultimately responsible for all health care delivered at the site." Dkt. 76, Pl. Resp. to Sy SOF ¶ 3 (citing Ex. G & H to Pl. Resp (Dkt. 76, pp.37, 39).

Dr. Sy was not present when Pope returned from surgery on October 4, 2023. Sy SOF ¶¶ 4, 9. Nobody contacted Sy on October 4, 2023, or October 5, 2023, about Pope's post-surgical status or about any complaints of pain Pope might have had. Sy SOF ¶¶ 10, 16. Sy did not personally interact with Pope on October 4, 2023, or October 5, 2023. Sy SOF ¶ 10.

Dr. Sy saw Pope for post-surgical care for the first time on October 6, 2023. Sy SOF ¶ 11. Sy inspected Pope's surgical wound, which was as expected given his recent surgery. Sy SOF ¶ 11. Sy noted some blood but that the surgical wound "loo[ed] ok." Chattic SOF ¶ 30. He ordered Norco as needed for five days to be followed by Tylenol three times a day as need. Sy SOF ¶ 11. He also ordered bandage changes to be completed by nursing staff and "planned for [Pope] to follow up" with his offsite providers. Sy SOF ¶ 11.

Pope returned to the healthcare unit on October 8, 2023, and asked for a dressing change. Chattic SOF ¶ 31. He did not have a sick-call pass for the visit and, according to Chattic's notes,

Pope "became agitated and threatening." Chattic SOF ¶ 31. Pope denies any aggression. Pl. Resp. to Chattic SOF ¶ 31. Pope was sent back to his cell without a dressing change. Chattic SOF ¶ 31.

Dr. Sy saw Pope the following day, October 9, 2023. Sy SOF ¶ 12. Sy examined Pope's surgical wound and noted "minimal drainage at gauze" and "some clear drainage," which Sy considered normal. Sy SOF ¶ 12 (citing Ex. B, Sy Decl. ¶ 10; Ex. 4, 10/9/23 MD Note). Sy's notes reflect that Pope did not complain of pain on October 9, 2023. Sy SOF ¶ 12. Pope "disputes" that he did not complain of pain. Dkt. 76, Pl. Resp. to Sy SOF ¶ 12.

Pope's hearing improved after the surgery. *See* Sy SOF ¶¶ 13, 14. On November 17, 2023, Pope returned to the University of Illinois, where he saw his surgeon for a six-week post-surgical assessment. Sy SOF ¶ 13. Pope reported that was "very happy with his hearing" and that he "hears much better." Sy SOF ¶¶ 13, 20; Pl. Resp. to Sy SOF ¶ 13. On May 10, 2024, Pope was given a hearing test during which he reported improved hearing since his surgery. Sy SOF ¶ 14.

This lawsuit followed. Pope alleged in the operative complaint that he was seen by Nurse Chattic when he returned from UIC Hospital on October 4, 2023, and Chattic refused to provide any medical care whatsoever. Dkt. 1, pp.4-5. Chattic also allegedly refused to change Pope's "blood-soaked bandage" or provide "necessary medication." *Id.*, p.5. Pope alleged that Chattic refused to provide care the following night as well. *Id.* When Pope saw Dr. Sy on October 6, 2023, Sy purportedly "admitted that he and Dixon medical staff and Nurse Chattic ought to have followed" the surgeon's orders. *Id.* Based on the alleged facts, the Court allowed an Eighth Amendment medical claim to proceed past screening against Chattic and Sy. Defendants Chattic and Sy deny the allegations and move for summary judgment. Dkt. 61, 72.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law controls which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The opposing party "may not rest upon mere allegations in the pleadings[.]" *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (quoting *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001)). Instead, the opposing party must make "a sufficient showing on every element of his case on which he bears the burden of proof[.]" *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019).

The Court considers relevant, properly supported evidence in the light most favorable to the opposing party. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021). The Court also draws "reasonable inferences from the evidence" in the opposing party's favor, but not speculative inferences. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

## Discussion

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). To prevail on a claim that his medical care violated the Eighth Amendment, a prisoner must be able to prove that: (1) he suffered from an objectively serious medical condition and (2) the defendant knew about and was deliberately

indifferent to the condition. *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019) (quoting citations and quotations marks omitted).

**A. Serious Medical Need**

A medical condition is objectively serious if it "has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotation marks and citation omitted).

Defendants Chattic and Sy argue that Pope did not have an objectively serious need when they encountered him on October 4 and 8, 2023 (Chattic) and on October 6 and 9, 2023 (Sy). District courts in this judicial circuit, however, have found that a prisoner's need for post-surgical care can constitute a serious medical need. *See, e.g.*, *Brown-Turner v. Loyd*, No. 20-cv-684-RJD, 2023 WL 4181234, at *3 (S.D. Ill. June 26, 2023) (recognizing at summary judgment that need for dressing changes for laceration constitutes serious medical need); *Pierce v. Luking*, No. 24-cv-01271-SMY, 2024 WL 4708043, at *2 (S.D. Ill. Nov. 7, 2024) (explaining in screening order that "Plaintiff's post-surgical pain and need for wound care were objectively serious medical conditions[.]"). Thus, construing inferences in Pope's favor, the Court considers Pope's need for post-surgical care sufficiently serious to satisfy the first prong of the analysis even though his need might not have been emergent when he saw Chattic or Sy.

**B. Deliberate Indifference**

The deliberate indifference inquiry looks to the defendant's "state of mind[.]" *Farmer*, 511 U.S. at 838 (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). To be held liable for an Eighth Amendment violation, a plaintiff "must provide evidence" that the defendant "actually knew of

and disregarded a substantial risk of harm." *Lockett*, 937 F.3d at 1023 (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)). Deliberate indifference requires a "subjective state of mind akin to criminal recklessness" and must be assessed in light of the "totality of care." *Owens v Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019); *see also Boykins v. Wilson*, No. 23-3027, 2025 WL 48413 at *2 (7th Cir. Jan. 8, 2025) (citing *Davis v. Kayira*, 938 F.3d 910, 915 (7th Cir. 2019)). Negligence or even gross negligence is not enough to establish deliberate indifference. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021).

**A. Nurse Chattic**

Nurse Chattic argues that she is entitled to summary judgment in her favor for several reasons, but one reason is dispositive: the record contains no evidence from which a jury could find that Chattic was deliberately indifferent to a serious risk of harm to Pope's health. To defeat summary judgment, Pope was required to show that Chattic knew of and disregarded a substantial risk of harm to his health on the dates Chattic encountered him. This means that Pope was required to show that Chattic was "both []aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that Chattic also "dr[e]w the inference." *See Farmer*, 511 U.S. at 837. Pope did not satisfy his burden.

Nurse Chattic encountered Pope on two occasions after his ear surgery. The first encounter was on October 4, 2023, when Chattic checked Pope back into Dixon following his return from UIC Hospital. Undisputed evidence shows that Pope had returned from same day surgery, and Chattic's role was to check him back into the prison. The record contains no evidence suggesting that Pope was in distress, required immediate medical attention, or that Chattic disregarded the need to arrange for aftercare. Instead, Chattic contacted Dixon's on-call doctor, Dr. Myers, and

discussed Pope's discharge instructions with Myers. Sometime later, Pope was prescribed an antibiotic twice a day for seven days and 600 mg Motrin for 20 days.

Pope presented no evidence that Chattic was involved in the medication decision or that Chattic knew Pope's pain was not being adequately managed on October 4, 2023, or the following day, October 5, 2023. Consequently, Chattic was allowed to defer to Dr. Myers's judgment as to medication decisions. *See Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 485-86 (7th Cir. 2022) (explaining that nurses may defer to prison physician's instructions without risking liability under section 1983 unless nurse "is aware of an inmate's pain and the ineffectiveness of the medications," delays advising the attending physician of a serious medical need, or delays the initiation of treatment).

Pope argues that the UIC doctor's prescription for Norco is enough to create a disputed issue of fact as to whether Chattic was deliberately indifferent to his need for Norco to control his pain. Dkt. 76, Pl. Resp. at 5-6, 9. But this argument has two flaws. First, "prison medical staff are not required to follow the recommendation of specialists if they are aware of the recommendations and choose a different course of action based on their own medical judgment." *Cooper v. Dombeck*, No. 25-1686, 2026 WL 1412593, at *3 (7th Cir. May 20, 2026). This means that Pope's prescription for Norco—written by a doctor from outside the prison—is not itself enough to create a disputed issue of fact. Second, Pope presented no evidence that Chattic was involved in the decision to initially order Motrin rather than Norco.

The record also contains evidence that Pope had an existing prescription for Tramadol (an opioid used to treat moderate to severe pain) and Gabapentin, which he received on October 4 and 5, 2023, in addition to the Motrin prescribed on October 4, 2023. Consequently, Pope was not

entirely without pain medications. *See Cooper*, 2026 WL 1412593 at *3 ("the Eighth Amendment does not entitle incarcerated patients to their preferred pain medication or require doctors keep them completely pain free") (cleaned up).

Because Chattic is a nurse, Pope had an additional hurdle. Chattic attested that she is not licensed to prescribe controlled substances, nor may she order medications for a prisoner. Chattic Decl. ¶¶ 4, 5. Medications must be ordered by "a licensed physician, psychiatrist, or dentist within the facility." Chattic Decl. ¶¶ 3, 4, 16. Pope presented no evidence to the contrary.

Chattic's second encounter with Pope occurred on October 8, 2023, when Pope presented for an unscheduled dressing change. It is undisputed that Chattic did not change Pope's wound dressing, but there is no evidence suggesting that Chattic knew a dressing change was medically necessary. Rather, undisputed evidence shows that Dr. Sy examined Pope's surgical wound the following day (October 9, 2023) and noted "minimal drainage at gauze" and "some clear drainage," which Sy considered normal. Thus, the fact that Chattic did not change Pope's dressing on October 8, 2023, does not suggest deliberate indifference to a serious risk of harm given the totality of care reflected in the record.

**B. Dr. Sy**

Dr. Sy argues that he is entitled to summary judgment in his favor because there is no evidence he was personally involved in constitutionally deficient care or that his treatment decisions caused harm. Dkt. 62. Sy is correct.

Pope's argument for liability against Dr. Sy rests on Sy's position as Dixon's Medical Director. In that role, Pope argues, Sy is "responsible for the overall care and health and well-being of" prisoners at Dixon. *See* Dkt. 76, pp.11-12. To support his argument, Pope cites to a Dixon

policy that provides, in relevant part, "[t]he Medical Director is responsible for making and reviewing all medical/clinical decisions." *Id.* (citing Ex. G1 & G2 to Pl. Resp.). Pope also points to Wexford's job description for the Site Medical Director. *Id.* (citing Ex. H to Pl. Resp.). But Sy's position does not, by itself, expose him to section 1983 liability.

It has long been established that section 1983 does not allow recovery based on a theory of *respondeat superior* (or supervisor) liability. *Wolf-Lillie v. Sonquist*, 699 F.2 864, 869 (7th Cir. 1983). A defendant "cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Id.* (citations omitted). "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official." *Id.* An "affirmative link" between the purported misconduct "and the official sued is necessary." *Id.*

It is undisputed that Dr. Sy had no contact with Pope when Pope returned from UIC Hospital on October 4, 2023, or on October 5, 2023. Sy did not personally examine Pope, nor was Sy consulted about Pope's post-surgical care on those dates. Sy cannot be held liable under section 1983 for deliberate indifference to a medical condition that was not brought to his attention. *See Farmer*, 511 U.S. at 842 (proving deliberate indifference requires showing that prison "official acted or failed to act despite his knowledge of a substantial risk of serious harm").

When Sy saw Pope on October 6, 2023, Sy examined Pope's wound, observed nothing out of the ordinary, and prescribed the medications recommended by the UIC doctors. This is not deliberate indifference.

The Court does not consider at length Dr. Sy's argument that Pope lacks evidence he was harmed by Sy's conduct, except to say that it was Pope's burden to establish a causal connection between Sy's conduct and a compensable injury. *See Carmody v. Bd. of Tr. of Univ. of Ill.*, 893

F.3d 397, 401 (7th Cir. 2018): *Meneweather v. Ritz,* No. 24-1214, 2025 WL 66040, at *3 (7th Cir. Jan. 10, 2025) ("the plaintiff claiming injury has the burden to offer some evidence of causation"). Pope did not satisfy his burden.

Finally, and for the sake of completeness, the Court addresses Pope's argument that he is entitled to a jury trial because the questions of whether a defendant was deliberately indifferent to his serious medical need must be decided by a jury. Dkt. 76, pp. 9-10. To reach a jury, though, Pope was first required to present evidence from which a jury could reasonably infer that Nurse Chattic or Dr. Sy acted with a subjective state of mind akin to criminal recklessness. *Stewart*, 14 F.4th at 764 (explaining the deliberate indifference requires a showing akin to criminal recklessness). Pope presented no such evidence.

## CONCLUSION

The Court grants Defendants Chattic's and Sy's motions for summary judgment. Dkt. 61, 72. Plaintiff's "motion for summary judgment" (Dkt. 79) is administratively terminated. *See* n.1, *supra*. Final judgment will be entered in Defendants' favor on Pope's claim under 42 U.S.C. § 1983. The Court relinquishes jurisdiction over any state-law claims without reaching the merits of the claims; any state-law claims are dismissed without prejudice. *Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1251 (1994) ("[T]he general rules is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."). This case is closed.

Date: September 22, 2026 By: ______________________________

Iain D. Johnston
United States District Judge